# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

WILLIAM M. HICKS, )
)
    Plaintiff, )
)
vs. ) Case No. 10-cv-157-CVE-TLW
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff brings this action under Section 205(g) of the Social Security Act (SSA), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II, 42 U.S.C. §§ 416(i) and 423, and supplemental security income benefits under Title XVI, 42 U.S.C. §1382c(a)(3).[1] [Dkt. # 2]. As set forth below, the undersigned recommends that the decision of the Commissioner denying benefits be affirmed.

### I.

Plaintiff was born on November 16, 1966, and was 37 years old on March 2, 2000, the alleged onset date of his disability. [R. 534]. Plaintiff completed the seventh grade, and a training program at Tulsa Welding School. [R. 535]. Plaintiff resides in Locust Grove in a home he shares with his mother and niece. [R. 533]. Plaintiff has previously been married. [R. 214]. Plaintiff has

---

[1] On December 28, 2007, the Administrative Law Judge ("ALJ") issued a written decision denying plaintiff's application for both disability insurance benefits and supplemental security income benefits. [R. 53]. Plaintiff's request for review by the Appeals Council was filed on August 19, 2008, and denied on January 28, 2010. [R. 6-10]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed his complaint in this Court on March 16, 2010.

past work experience as a welder, delivery driver, cabinet assembler, cable installer and plastic injection molding operator. [R. 133]. His most recent employment was in late 2000 and early 2001, as a security guard for Burns Security Company. [R. 540]. Plaintiff previously filed an application for social security disability benefits in 2002 or 2003, alleging an onset date of December 12, 1996; his application was denied. [R. 106, 567].

II.

The procedural and medical history of this case is pertinent to the issues raised by plaintiff in this appeal, and accordingly, are summarized for clarification.

Plaintiff's medical history includes two work-related injuries. In December 1996, plaintiff injured his neck and lower back. In April 1997, plaintiff underwent a fusion of the cervical spine (neck) at the C4-5 level, and a lumbar spine (back) diskectomy at the L5-S1 level, to repair the injuries. [R. 403]. Plaintiff was released to return to work in July 1997. [R. 425]. In July 1999, plaintiff re-injured his lumbar spine at the L5-S1 level. [R. 224]. In April 2000, Dr. Mark Hayes performed a laminectomy, diskectomy, fusion and placement of orthopedic hardware at the L5-S1 level. [R. 279, 338]. In October 2000, surgery was again performed to remove the orthopedic hardware. [R. 244, 271]. In November 2000, Dr. Hayes released plaintiff to return to work. [R. 297].

In March 2001, plaintiff was diagnosed with nonunion (breakdown) of the fusion at the L5-S1 level. [R. 293]. Dr. Hayes performed a follow-up surgery to re-fuse the area. [R. 300]. In November 2001, Dr. Hayes performed surgery to remove a bone stimulator, part of the orthopedic hardware he had implanted. On December 13, 2001, Dr. Hayes released plaintiff to return to work. [R. 285].

In May 2004, plaintiff had surgery to remove additional hardware and explore the fusion (which was found to be solid). [R. 345]. In June 2004, plaintiff developed a staph infection at the location of the lumbar spine incision. [R. 346]. On June 1, and again on June 25, 2004, Dr. Randall Hendricks reopened, irrigated, and cleansed the area inside the incision. [R. 346, 350]. In July 2004, Dr. Mark Grosserode determined that plaintiff's lumbar wound had healed and his pain was almost resolved. [R. 381]. On October 4, 2004, Dr. Grosserode released plaintiff to return to work. [R. 376].

III.

On May 1, 2006, plaintiff filed the subject application for disability insurance benefits ("DIB"), alleging his "illnesses, injuries, or conditions that limit his ability to work" as "low back" with an onset date of March 2, 2000. [R. 116]. Plaintiff explained that his low back limited his ability to work because he "can't bend, stoop, twist, walk like I did before." [R. 117]. On September 5, 2006, plaintiff's claim was denied initially.[2] The decision reiterated that plaintiff alleged his disability as "a back condition" and advised that his "condition was not disabling on any date through September 30, 2004," his date last insured. The decision reads, in part:

> Your medical records show you had several operation[s] on your spine but had recovered adequately prior to November 30, 2004 when you were last insured for disability benefits. Your back condition limited your ability to work to some extent but not enough to have prevented you from doing all work. You were able to sit, stand, walk, and use your hands normally and could have done some types of less demanding work prior to September 30, 2004. Medical evidence does not show any other impairments which kept you from working on or before the date you were last

---

[2] In denying plaintiff's claim, the agency identified medical records received in 2008 from the following providers: Mark H Grosserode M.D.; Spine Specialists of Tulsa (Dr. Mark Hayes); Central States Orthopedic Spec (Dr. Mark Hayes); Applied Medical Professions; Free Clinic of Mayes County (Dr. Michael Gietzen); Southcrest Hospital (Dr. Mark Hayes); Jeffrey Greenberg M.D. and VA Medical Center Muskogee. [R. 66].

3

insured for disability benefits.

[R. 67]. On September 11, 2006, counsel was appointed to represent plaintiff on his Title II, DIB claim. [R. 74]. On September 15, 2006, plaintiff filed an application for reconsideration claiming an inability to work as a result of his "disabilities." [R.75]. The December 6, 2006 decision denying reconsideration stated that no new evidence had been received and that the medical evidence of record did not support his claim for "low back" disability. [R. 76]. On December 19, 2006, plaintiff filed a request for hearing before an ALJ, claiming that not all of his medical evidence had been considered. In answer to a question in his Disability Report-Appeal as to whether "any change" in his illnesses, injuries, or conditions had occurred since May 2, 2006, plaintiff responded: "Yes, I now have a popping in my low back followed by sharp pain in low back and down both legs," the "change" having occurred on August 1, 2006. [R. 144-145]. In a second Disability Report- Appeal, plaintiff said his condition changed for the worse again on September 10, 2006. It was becoming harder for him to sit or stand for any length of time due to "sharp back pain." [R. 154]. Plaintiff said he could care for himself "Fine," but he spends more time resting his back to try and ease the pain. [R. 156]. Plaintiff also completed a Medication Form, saying he took two medications for high blood pressure, two medications for chronic back pain and a prescription sleeping pill. [R. 160].

IV.

The three issues raised in the instant appeal concern plaintiff's allegations of <u>neck pain</u>, tingling in his shoulders and numbness in his hands, as a result of his cervical spine injury in 1997. Plaintiff does not directly challenge the ALJ's decision denying him benefits as to his allegation of back pain. Yet, the administrative record is nearly void of any allegation by plaintiff to any of his many treating physicians concerning neck pain or pain radiating down his shoulders and into his

4

hands.

The record shows that plaintiff injured his neck in 1996, and underwent a cervical spine fusion at the C4-5 level in 1997. The record shows a notation by Dr. David White, M.D. on an examination report dated October 20, 1999, that plaintiff "is able to flex his neck entirely forward. The patient extends and touches his ear to his shoulder both right and left. There is no palpable tenderness over the cervocothoracic spine." [R. 237]. In a medical record dated April 7, 2000, plaintiff reported that he was "pain free" following his 1997 cervical spine disk surgery and lumbar spine disk procedure. [R. 224]. On January 23, 2002, Dr. Kenneth Trinidad D.O., an agency physician, conducted an office examination of plaintiff for worker's compensation purposes. Dr. Trinidad noted that plaintiff had a cervical spine fusion in 1997, as part of plaintiff's medical history but did not indicate any complaints of pain or limitations involving plaintiff's neck, shoulders, arms or hands. On August 22, 2002, a Progress Record from the Free Clinic of Mayes County, shows plaintiff complaining of chronic low back pain. Dr. Michael Gietzen, D.O., a physician with that clinic, undertook a physical examination of plaintiff and noted that plaintiff's neck was supple without adenopathy or thyroidomegaly. [R. 370]. On August 14, 2003, plaintiff was again seen by Dr. Gietzen for a follow-up on his complaint of back pain and medication refill. [R. 365]. Dr. Gietzen conducted a second physical examination and entered a notation that plaintiff's neck was supple. [R. 365]. From September 2, 1999 through August 27, 2007, the administrative record is void of any complaints by plaintiff of neck pain, or tingling in his shoulders, or numbness in his hands.

One month prior to the hearing before the ALJ, plaintiff returned to Dr. Trinidad for an interview, medical records review, and an office examination. [R. 434]. On August 27, 2007, Dr.

5

Trinidad issued his report. The report summarized plaintiff's medical history, including his cervical spine fusion in 1997, and his numerous lumbar spine surgeries from 1997 through 2004. Dr. Trinidad mistakenly reported that plaintiff's last lumbar surgery was in 2006, but the record was corrected by the ALJ at the hearing to clarify that plaintiff's last back surgery was in 2004. [R. 433, 531]. Dr. Trinidad opined that plaintiff's "two significant work-related spinal injuries which have resulted in a total of seven spinal surgeries . . .have caused severe disabilities . . .[and] render him unable to reenter the active work force in this region of the country for the next twelve months and in all probability indefinity." [R. 435]. Dr. Trinidad commented that plaintiff has "restricted movement in the neck" and "weakness in the left arm and weakness in both legs." He opined: "This severely precludes his ability to perform any physical labor and also impairs his ability to perform sedentary work as he is not able to sit for more than short periods and cannot perform repetitive tasks with his feet or left hand." [R. 435].

V.

On September 14, 2007, counsel was appointed to represent plaintiff at the hearing before the ALJ, set for September 24, 2007. [R. 104, 519]. At the hearing, the ALJ identified plaintiff's claim as a Title II, DIB application, with September 2004, being the date last insured. Counsel responded:

> That is and, Your Honor, I have been searching through the file over the last couple weeks and I'm not sure why there is not an SSI application, in addition, other than for the sole fact that there had been some Worker's Comp cases on during his disability and so I would ask that he be considered for SSI, in addition to SSD.

[R. 524]. The ALJ granted counsel leave to file his SSI application and advised that he would keep plaintiff's file open and escalate the SSI application to the hearing level, and allow him time to

6

resolved the issue in the district office. [R. 524]. On September 25, 2007, the day following the hearing, plaintiff filed his application for SSI alleging a disability onset date of March 2, 2000.[3] [R. 53]. The relevant period under review for SSI benefits is September 25, 2007, the date plaintiff filed his application for SSI, through December 28, 2007, the date of the Commissioner's final decision. See 20 C.F.R. §§ 416.395, 416.501.

In his opening statement, plaintiff's counsel requested that the ALJ consider whether plaintiff met the following listings of impairments: Listing 1.04 for cervical spine (neck) fusion and diskectomy with lumbar spine (back) fusion in1997; lumbar spine fusion in October 2000; lumbar spine fusion breakdown and re-fusion in 2001; failed back syndrome in October 2002; removal of lumbar spine hardware May 2004; staph infection, irrigation and debridement on three occasions following lumbar spine hardware removal; and diagnosis of chronic back pain in April 2000 and January 2003; and abnormal EMG testing which showed radiculopathy in the glutcus modius in April 2004; Listing 1.08 for soft tissue injuries related to his fusions, surgeries, and numbness in his legs and arms; and Listing 12.04 for depression.

At the hearing, in response to questions asked by the ALJ, plaintiff testified that: (1) his disability onset date of March 2, 2000, corresponds to the date he was diagnosed with breakdown of the lumbar fusion at the L5-S1 level, (2) he had neck surgery in 1997, with no subsequent neck surgeries, (3) he received Worker's Compensation benefits from 2001 to 2005, settling for a lump sum payment in late 2005, (3) he was employed as a welder in the 1990's until 1999, (4) he can care for all his personal needs, (5) he resides with his mother and niece and they perform all household

---

[3] Plaintiff's application for SSI benefits is not included in the administrative transcript filed with this Court. See [dkt. # 11].

chores, (6) he rides a lawn mower for 20 minutes to cut grass along the fence line, (7) he visits friends twice a month, (8) he watches television daily, (9) his back hurts during the day requiring him to lie down, (10) he can walk or stand for 20 minutes and then must lie down because of back pain that radiates down his legs, (11) he can only sit for 45 minutes to an hour because of his throbbing back, (12) he cannot reach overhead because of numbness in his arms, (13) he was treated for depression from 2001 to 2003, and (14) he has a medical appointment once every four months. [R. 533-548].

In response to questions asked by his counsel, plaintiff testified: (1) he drives his truck about twice weekly but he has problems with numbness and tingling in his legs, (2) he leans on a grocery buggy while shopping to relieve back pressure, (3) lifting a potato bag increases his back pain and numbness in his hands, (4) he can lift no more than a gallon of milk, (5) lifts himself out of a chair using his legs rather than his back, (6) the numbness and tingling in his hands began two years ago, (7) he has pain is in his back and neck, (8) he has had restricted movement in his neck since 1997, (9) pain goes down his shoulders to his hands causing numbness in his hands, (10) in 2000 he quit his security officer job because of the breakdown of the fusion in his back, (11) he rests for 30 minute intervals about 8 to 10 times daily with a pillow between his legs to ease back pain, (12) he has spasms in his back muscles but not in his neck, (13) he has difficulty sleeping at night because of back pain, (14) depression interferes with slept and concentration, (15) he has no medical treatment other than refills on medications, (16) his back pain is increased tremendously with bending or twisting, and (17) pain increases his depression. [R.550-564]. The ALJ briefly examined plaintiff about his two year history of numbness and tingling in his hands and the reason he failed to seek medical treatment for this condition. Plaintiff responded that the Indian Health Care Clinic

will only treat one condition at a time so he could not seek treatment for multiple conditions in one visit. [R. 556].

An impartial vocational expert, Dr. Ann Young, testified at the hearing based on her review of the file and plaintiff's testimony. The ALJ propounded a hypothetical question to her which assumed the claimant could perform light and sedentary work, conditioned upon certain limitations, which included: unable to climb ropes, ladders, and scaffolds; unable to work in environments that expose him to unprotected heights and dangerous moving machinery parts; afflicted with symptoms from a variety of sources to include moderate chronic intermittent pain and fatigue, and allied disorders, all variously described, that are of sufficient severity so as to be noticeable to him at all times; only occasionally able to climb ramps or stairs; not more than occasionally able to bend, stoop, crouch, and crawl; unable to perform tasks requiring overhead reaching more than occasionally; and is further unable to perform tasks requiring the use of foot pedals more than occasionally. [R. 568-571]. Based on these limitations, the vocational expert testified that the hypothetical claimant could not perform plaintiff's past work, but that he could perform alternative light exertional work such as a marker, or laundry sorter, and in the sedentary level such as a sorter and trimmer. [R. 569-571]. The vocational expert testified that there were sufficient such jobs in the regional and national economy and that her testimony was consistent with job descriptions provided by the Dictionary of Occupational Titles ("DOT").

VI.

Plaintiff raises three issues on appeal.

1. The ALJ failed to discuss and analyze plaintiff's neck complaints and those of his hands, failed to mention plaintiff's neck fusion surgery, and erroneously stated plaintiff made no complaints about his neck.

9

2.  The ALJ failed to explain the lack of limitation of plaintiff's use of his hands and how he could perform the two sedentary jobs which require frequent reaching, handling and fingering.

3.  The ALJ failed to explain why he did not place any restriction on plaintiff's neck movement, where the vocational expert testified that more than occasional movement of the neck would negate the two sedentary jobs.

[Dkt. # 13 at 2].

## VII.

On December 28, 2007, the ALJ issued a written decision denying plaintiff's application for both DIB and SSI benefits.[4] [R. 53]. The ALJ found that plaintiff had one severe impairment, and identified it as a "herniated lumbar disk." [R. 55]. He found that plaintiff's impairment or combination of impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically he rejected counsel's claim, in his opening statement, that plaintiff met Listing 1.04 (disorders of the spine), which counsel stated encompassed both plaintiff's cervical spine fusion and lumbar spine diskectomy fusion, and all subsequent surgeries in the L5-S1 level. [R. 528]. He found that Listing 1.08 (soft tissue injury) was not met, nor was Listing 12.04 (affective disorders). He determined that plaintiff had the residual functional capacity ("RFC") to perform light and sedentary exertional work, consistent with the enumerated limitations included in the hypothetical question to the vocational expert, which he set forth in full in his decision. The ALJ summarized plaintiff's hearing testimony, including his claim that he has back

---

[4] On August 4, 2008, plaintiff discharged his counsel and on August 14, 2008, new counsel was appointed. [R. 44, 45]. On August 19, 2008, plaintiff filed a request for review before the Appeal Council and submitted additional medical evidence from the Claremore Indian Clinic covering treatment, radiology reports and medication refills from January 2008 through April 2008. The medical reports indicate that plaintiff sought treatment on complaints of back pain. [R. 12-43]. The Appeals Council denied plaintiff review on January 28, 2010. [R. 6-10].

pain that goes down his legs and neck pain that goes down to his shoulders. [R. 58]. He found that plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms was not entirely credible. The ALJ summarized the treatment, radiology reports, medications and surgeries following plaintiff's back injury in 1999. [R. 59]. He noted that plaintiff's testimony as to his daily activities showed significant limitations in his ability to sit, stand, or walk for any prolonged time, that he was limited by back pain that also caused him problems with sitting, standing, and walking. He noted that plaintiff made no complaint concerning any "neck or cervical pain," and that his symptoms were aggravated by physical activity or by sitting, standing, or walking too long. [R. 59]. The ALJ determined that plaintiff's credibility was "diminished substantially" by early objective medical evidence which shows that the severity of plaintiff's impairments and the effect on his ability to work was in excess of his testified to limitations. [R. 60]. The ALJ referenced and relied on the medical reports from his treating physicians and from examining physicians who evaluated his worker's compensation claim, both of which show plaintiff could perform light exertional work. He identified plaintiff's primary treating physicians as Drs. Vosburgh, Traub, Mayoza and Hayes and found that they were in a better position to evaluate plaintiff's work-ability than the non-treating physicians, Dr. Trinidad and Dr. Jim Martin, who respectively assessed plaintiff as having 57 percent to 100 percent physical impairment. [R. 60]. In weighing these opinions, the ALJ found: "The treating physicians' medical opinions show that the claimant can return to work accordingly, any other medical opinion is inconsistent and is not entitled to more than minimal weight." [R.60].[5] In particular, the ALJ found that "Dr. Trinidad's

---

[5] Plaintiff correctly notes that evidence from the Indian Health Clinic shows more than two entries concerning low back pain. However, this observation is irrelevant to the merits of plaintiff's claim that the ALJ failed to discuss plaintiff's purported neck pain.

11

August 27, 2007 opinion is inconsistent with the claimant's evidence from the Indian Clinic which shows only two entries concerning low back pain." [R. 60]. The ALJ noted that Dr. Hayes released plaintiff to return to work in December 2001. The ALJ found plaintiff's credibility to be "diminished substantially" because an EMG performed on April 22, 2004, shows that the "only nerve" affected was in plaintiff's gluteal area, not where he otherwise alleges. [R. 60]. Based on plaintiff's RFC and the testimony of the vocational expert, the ALJ concluded that plaintiff could perform light and sedentary work, with limitations, he was not disabled, and his claim for disability was denied. The ALJ's decision was made at step five in the sequential analysis required under Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[6]

VIII.

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion. Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).

---

[6] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52.)

The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Although the Court is not to reweigh the evidence or try the issues *de novo*, the record is to be meticulously examined to determine whether the substantiality test has been met. See Sisco v. United States Dep't of Human Serv, 10 F.3d 739, 741 (10th Cir. 1993), and Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). The term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. A claimant is determined to be disabled only if he is unable to do his previous work; and considering his age, education, and work experience, cannot perform any other kind of work in the regional or national economy. 42 U.S.C. § 423(d). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of an impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

IX.

All three of the issues plaintiff raises in this appeal challenges the ALJ's failure to account for plaintiff's neck pain. Plaintiff contends the ALJ was required to analyze and discuss plaintiff's testimony concerning his neck and hands. The undersigned disagrees. Other than plaintiff's subjective testimony at the hearing before the ALJ, and the August 27, 2007 report prepared by Dr. Trinidad, which was solely based on plaintiff's subjective complaints, there is no evidence in the record that shows plaintiff has pain in his neck, or that he has restricted movement in his neck. To the contrary, the evidence shows that plaintiff never complained of pain in his neck, or numbness or tingling in his hands, and it also affirmatively negates plaintiff's testimony by notations in several examination notes by plaintiff's treating physicians that plaintiff's neck is supple and flexible. The scant subjective evidence in the record relating to plaintiff's purported neck pain is not "significantly probative." An ALJ is not required to discuss every piece of evidence; he must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Dr. Trinidad's opinion is controverted by reliable evidence from plaintiff's treating physicians and his isolated opinion is not significantly probative. See e.g. Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009). Plaintiff's reliance on Spicer v. Barnhart, 64 Fed.Appx. 173 (10th Cir, 2003) (unpublished)[7] is misplaced. In Spicer the court found that although plaintiff complained of pain chiefly in her lower back and hips, the ALJ erred in not considering her alleged impairments in her hands because there were "several documents pointing to a demonstrable impairment involving plaintiff's hands that should have been

---

[7] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

considered by the ALJ in assessing plaintiff's RFC." Id. at 176. In the instant case, the record is nearly void of any evidence of neck or cervical pain and any impairment in plaintiff's use of his hands. Moreover, the ALJ cited objective evidence of an EMG performed on April 22, 2004 which showed that the only nerve affected was in plaintiff's gluteal area and not where plaintiff alleged his pain was located. [R. 60]

Plaintiff suggests the ALJ ignored his neck fusion surgery and the resulting disabling neck pain and numbness in his shoulders and hands. To the contrary, the ALJ specifically found that plaintiff's spinal disorder did not meet Listing 1.04, which his counsel argued encompassed both plaintiff's cervical spine fusion and lumbar spine fusions. [R. 56]. In his summary of plaintiff's testimony, the ALJ specifically mentioned plaintiff's claim that he has a pain in his neck that goes down from the shoulders. [R. 58]. In addition, the ALJ correctly noted that in his inquiry regarding plaintiff's limitations of daily living, plaintiff testified that it was his back that limited his activities around the house and caused him to rest for intervals of 30 minutes, 8 to 10 times every day. The ALJ correctly noted that plaintiff made no mention that his neck interfered with these activities. On examination by his counsel, plaintiff testified that his neck had restricted movement in that he could not move it as far. He also testified that the purported numbness in his hand required him to scoot things off a flat surface rather than pick things up and that he needed assistance in lifting a bag of potatoes at the grocery store. There is no contradiction in the ALJ's decision as the plaintiff alleges limitations in his daily activities as a result of neck pain. The ALJ limited his findings as to daily activities to plaintiff's claim that he had a "significant limitation in his ability to sit, stand, or walk for prolonged time." The record shows that plaintiff did testify that it was only the pain in his back that limited these particular activities, and plaintiff made no mention that neck or cervical pain

interfered with these activities, as found by the ALJ. [R. 59].

Plaintiff does not challenge the ALJ's credibility determination. The ALJ specifically found that plaintiff's complaints as to the intensity, persistence and limiting effects of his symptoms were not entirely credible. [R. 59]. In addressing credibility, the ALJ relied on plaintiff's early objective medical evidence that shows the level of severity of plaintiff "impairments" (written in the plural) and the effect on his ability to work was "in excess of his testified to limitations." [R. 60]. The ALJ also references the reports of plaintiff's physicians. The record clearly establishes that plaintiff's cervical spine fusion was solid and resolved in July 1997, and that plaintiff was released to return to work. As to his lumbar spine fusion, which is the only impairment that plaintiff sought medical treatment for after 1997, the ALJ specifically found that Dr. Hayes released plaintiff to return to work in December 2001. The ALJ concluded that "this demonstrates that the claimant can perform substantial work-related activities." [R. 60].

Moreover, the ALJ did address Dr. Trinidad's report which was the only evidence of record to support plaintiff's claim of neck pain and numbness. The ALJ listed plaintiff's treating physicians as Drs. Vosburgh, Traub, Mayoza and Hayes. These physicians are medical specialists in orthopedic medicine. The ALJ stated: "They performed his surgeries and are in a better position to evaluate the claimant than anyone else." [R. 60]. The ALJ found the opinions of Dr. Trinidad and Dr. Martin, who are worker's compensation examiners, not treating physicians, were inconsistent and not entitled to more than minimal weight. [R. 60].

Plaintiff contends the ALJ propounded an improper hypothetical question to the vocational expert, resulting in an unreliable RFC assessment. The ALJ's assessment of plaintiff's RFC is consistent with that of the physical RFC assessment made by the agency physician consultants, Dr.

Thurma Fiegel, M.D [R. 393-400], and Dr. Luther Woodcock [R. 401]. The ALJ properly considered all the evidence of record and relied on the evidence as a whole to formulate plaintiff's RFC. He gave specific evidentiary reasons to support his conclusion that plaintiff had sufficient RFC to work, with specific limitations. The vocational expert testified that jobs were available in the region that plaintiff could perform. The Tenth Circuit instructs that: "[h]ypothetical questions posed to vocational experts must sufficiently relate to the claimant's particular impairments. However, this court has held that the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ, and a hypothetical question will be improper only if it was clearly deficient." Stowe v. Shalala, 13 F.3d 407 (10 Cir. 1993) (unpublished). The undersigned finds that the limitations contained in the ALJ's hypothetical question reflect and account for the impairments and limitations that are borne out by the evidence.

Plaintiff contends the ALJ's hypothetical failed to include plaintiff's hands and neck limitations. The vocational expert was present at the hearing before the ALJ and advised him that she had reviewed plaintiff's medical files, and listened to his hearing testimony. [R. 565]. Based on those admissions, the ALJ asked her to assume a claimant that is afflicted with symptoms from a variety of sources to include moderate chronic intermittent pain and fatigue, and allied disorders, and unable to perform tasks requiring overhead reaching more than occasionally. [R. 568-571]. The ALJ's question covers "symptoms from a variety of sources" to include "intermittent pain," which would necessarily encompass plaintiff's testimony regarding his pain as heard by the vocational expert at the hearing. The ALJ also placed a limitation on overhead reaching. At the hearing the plaintiff testified that he had problems with overhead reaching because of numbness in his arms. [R. 548]. Thus, the undersigned finds no error in the ALJ's failure to specifically name cervical

spine limitations, because his hypothetical question to the vocational expert necessarily covered the limitations as testified to by plaintiff.

In that the undersigned finds no error in the ALJ's failure to specifically identify plaintiff's alleged neck pain and hand numbness as impairments because substantial evidence of record negates this claim, the undersigned correspondingly finds no error in the ALJ's failure to specifically identify these impairments in his RFC; and further, the undersigned finds no error in the ALJ's failure to place additional restrictions as to the sedentary jobs which plaintiff could perform as determined by the vocational expert. Plaintiff does not challenge the ALJ's ultimate conclusion that plaintiff's low back is not a disabling condition within the meaning of the SSA.

X.

The undersigned finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Thus, the undersigned RECOMMENDS that the ALJ's decision denying benefits be AFFIRMED.

**OBJECTION**

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by May 17, 2011.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to:

> determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 3rd day of May, 2011.

_____
T. Lane Wilson
United States Magistrate Judge