UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM M. HICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-CV-0157-CVE-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 16) of Magistrate Judge T. Lane Wilson recommending that the Court affirm the Commissioner's decision to deny plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Plaintiff has filed an objection to the report and recommendation and asks the Court to remand the case for further administrative proceedings. Dkt. # 17. Defendant has not responded to plaintiff's objection and the time to respond has expired.

**I.**

Plaintiff William M. Hicks was born in November 1966 and resides with his mother and niece in Locust Grove, Oklahoma. He has completed the seventh grade and did not obtain a GED. Dkt. # 11-5, at 36-37. Plaintiff has worked as a welder, delivery driver, cable installer, cabinet assembler, and plastic injection molding operator. Dkt. # 11-1, at 35. He filed an application for social security disability benefits in 2002 or 2003 alleging onset of disability on December 21, 1996, but that application was denied. Id. at 8; Dkt. # 11-5, at 69.

On May 1, 2006, plaintiff filed the application for disability insurance benefits that is the subject of this appeal, and he alleged onset of disability on March 2, 2000. Plaintiff stated that his "low back" was the illness, injury, or condition preventing him from working, and claimed that he was unable to bend, stoop, twist, or walk as he could before the onset of disability. Dkt. # 11-1, at 19. Plaintiff's claim for disability benefits was initially denied on September 5, 2006. Id. at 66-70. He requested reconsideration of the initial denial of his claim, and the denial was affirmed upon reconsideration. Id. at 67. Plaintiff requested a hearing before an administrative law judge, and his request for a hearing was granted. Id. at 81, 84-85.

On September 24, 2007, administrative law judge David W. Engel (ALJ) held a hearing and plaintiff was represented by counsel at the hearing. Dkt. # 11-5, at 23. Plaintiff's attorney noted that she had reviewed plaintiff's file and found that plaintiff had not filed an application for SSI benefits. The ALJ stated that he would keep plaintiff's case open and allow a subsequently filed application for SSI to relate back to the date of plaintiff's application for disability benefits. Id. at 26. He also gave plaintiff 14 additional days to submit updated medical records from the Claremore Indian Hospital. Id. at 30. Plaintiff's counsel stated that plaintiff's last insured date was September 30, 2004, and argued that plaintiff had an impairment or combination of impairments resulting in a finding that he was disbled under listing 1.04 for cervicial fusion and lumbar diskectomy with fusion, listing 1.08 for soft tissue injuries, and listing 12.04 for depression. Id. at 30-31.

Plaintiff testified that he had seven or eight lower back surgeries, and that his doctors had not recommended additional back surgery. Id. at 41. Plaintiff had neck surgery in 1997 and did not have any follow-up surgery on his neck. Id. at 42. Plaintiff last worked in 2001 as a security guard for Burns Security Company, and he received workers' compensation benefits from 2001 to 2005.

Id. at 43. Plaintiff testified that he had prior work experience as a fabrication or pipe welder from 1990 to 1999, and he stocked shelves at a grocery store before working as a welder. Id. at 46. He does not help with most household chores, but he does assist with lawn mowing using a riding lawn mower. Id. at 46-47, 62. Plaintiff rests for most of the daytime hours and estimates that he can stand or walk for about 20 minutes before having to sit down. Id. at 48, 62. He testified that pain in his back and legs prevented him from walking or standing for more than 20 minutes, but walking for 20 minutes did not create any more or less pain than standing for the same amount of time. Id. at 49. He claims that frequent reaching causes numbness in his arms. Id. at 50. Plaintiff received treatment for depression from 2001 to 2003 but he "just stopped going" for treatment, and he did not request the advice of his doctor before stopping the treatment. Id. at 50-51.

Plaintiff stated that he has difficulty driving due to numbness and tingling in his legs, and he cannot drive for more than half an hour without taking a break. Id. at 53. He accompanies his mother and niece to the grocery about twice a week, but he has difficulty lifting items from shelves because of pain in his back and numbness in his hands. Id. at 54. Plaintiff testified that he could not lift anything heavier than a gallon of milk and, regardless of an object's weight, he has difficulty picking up any item from a flat surface. Id. at 55, 57. Plaintiff goes to the Claremore Indian Hospital for medical treatment and his most common complaint is high blood pressure and back and neck pain. Id. at 58. He testified that he has a restricted range of movement in his neck, and he occasionally feels pain in his neck and shoulders. Id. at 58-59. In his most recent visit to the hospital, plaintiff received prescriptions for numerous blood pressure and pain medications, and he stated that he was having difficulty functioning on a daily basis without pain medication. Id. at 60.

The ALJ called Angharad B. Young, Ed.D., as a vocational expert (VE) to testify about the exertional requirements of plaintiff's past work and the availability of jobs in the marketplace that could be performed by a person with plaintiff's physical limitations. The ALJ asked a series of hypothetical questions to determine if plaintiff would be able to return to his past relevant work or if alternate jobs were available in sufficient numbers. <u>Id.</u> at 70. The hypothetical questions were based on a person of plaintiff's age and educational background with "symptoms from a variety of sources," and each hypothetical was based on an assumption that the hypothetical person was limited to light or sedentary work. <u>Id.</u> at 70. Assuming that person suffered from mild or moderate chronic pain that did not interfere with the person's ability to remain attentive, the VE eliminated all of plaintiff's past relevant work except for security guard and identified four additional jobs available in sufficient numbers that would not be excluded by the proposed exertional limitations. The VE identified two jobs at the light exertional level, marker and laundry sorter, and two jobs at the sedentary exertional level, sorter and trimmer. <u>Id.</u> at 71-72. The VE testified that adding a limitation permitting only occasional movement of the head or neck would "impact almost any type of work" and would prevent a person from performing almost any type of unskilled work. <u>Id.</u> at 75. The VE also noted that missing even one day a week for a doctor's appointment could cause a person to lose an unskilled job. <u>Id.</u> at 76. On examination by plaintiff's attorney, the VE testified that a limitation as to repetitive use of the hands would prevent a person from performing any of the occupations previously listed by the VE, because the jobs required frequent reaching and handling. <u>Id.</u> at 76-77. In addition, the VE stated that plaintiff would not able to work in any occupation if it were assumed that plaintiff's testimony concerning his limitations was true. <u>Id.</u> at 77.

On December 28, 2007, the ALJ issued a written decision denying plaintiff's claim for disability and SSI benefits. The ALJ determined that plaintiff had a residual functional capacity (RFC) allowing him to work with certain restrictions:

> William M. Hicks was 33 years of age on the alleged onset date of disability (March 2, 2000) (he is currently 40 years of age with a birth date of November 1, 1966) with an 8th grade education (1981) and past relevant work identical to that identified by the vocational expert in this case. He is unable to climb ropes, ladders, and scaffolds, and is unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. He is able to understand, remember, and carry out simple to moderately detailed instructions in a work-related setting, and is able to interact with co-workers and supervisors, under routine supervision. He is afflicted with symptoms from a variety of sources to include moderate chronic intermittent pain and fatigue, and allied disorders, all variously described, that are of sufficient severity so as to be noticeable to him at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations. With respect to lifting, carrying, pushing, and pulling, he is limited to 2 hours (combined total) of an 8-hour workday, with regular work breaks. He is able to sit for 6 hours (combined total) of an 8-hour workday, with regular breaks. He is able to climb ramps or stairs only occasionally, is able to bend, stoop, crouch, and crawl not more than occasionally and is unable to climb ropes, ladders, and scaffolds, or work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts or environments where he would be exposed to extremes of temperature (less than 50 degrees Fahrenheit or more than 90 degrees Fahrenheit). He is unable to perform tasks requiring overhead reaching more than occasionally and is further unable to perform tasks requiring the use of foot pedals more than occasionally.

Dkt. # 11, at 59. The ALJ considered whether plaintiff's testimony supported a finding of more severe impairments than those shown by the objective medical evidence and noted that plaintiff claimed to have a "pain in his neck that will go from the shoulders." Id. at 60. However, he found that plaintiff's testimony concerning the severity of his symptoms was not entirely credible and that the objective medical evidence did not support many of the physical limitations described in plaintiff's testimony. Id. at 60-61. He also stated that plaintiff made "no complaint concerning any neck or cervical pain," and he did not make a specific credibility finding as to plaintiff's complaints

5

of neck pain. Id. at 61. The ALJ found that plaintiff was unable to perform any of his past relevant work and proceeded to step five of the analysis. He relied on the VE's testimony to support a finding that plaintiff could perform the light jobs of marker and laundry sorter and the sedentary jobs of sorter and trimmer, and these jobs were available in the regional and national economies in sufficient numbers. Id. at 63. Thus, he determined that plaintiff was not disabled. Id. at 63.

Plaintiff asked the Appeals Council to review the ALJ's decision, and the Appeals Council denied plaintiff's appeal. Id. at 8-11. On March 16, 2011, plaintiff filed this case seeking judicial review of the Commissioner's denial of his request for disability benefits. Dkt. # 2. Plaintiff filed an opening brief asserting three arguments:

> A. Whether it was error for the ALJ to fail to discuss and analyze plaintiff's neck complaints and those of his hands, where the ALJ failed to mention plaintiff's fusion surgery in the Decision, and where the ALJ erroneously stated that at one point in the Decision that plaintiff made no complaints about his neck?
>
> B. Whether the ALJ was required to explain his lack of limitation of plaintiff's use of hands, where the remaining 2 sedentary jobs required "frequent" reaching, handling, and fingering?
>
> C. Whether it was error the for [sic] ALJ to fail to explain why he did not place any restriction on plaintiff's neck movement, where the VE testified that more than occasional movement of the neck would negate the sole remaining 2 sedentary jobs?

Dkt. # 13, at 6. The matter was referred to a magistrate judge for a report and recommendation, and the magistrate judge recommended that the Commissioner's decision be affirmed. Dkt. # 16. Plaintiff filed an objection to the report and recommendation, and he renewed the three issues raised in his opening brief. Dkt. # 17. Defendant has not responded to plaintiff's objection to the report and recommendation, and the time to respond has expired.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

Plaintiff objects to the magistrate judge's report and recommendation on several grounds. Dkt. # 17. However, each of plaintiff's objections is based on an overarching claim that the ALJ failed to consider plaintiff's request for exertional limitations as to plaintiff's neck and hands and this omission requires the Court to remand the case for further administrative proceedings. Defendant has not responded to plaintiff's objection to the report and recommendation.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhardt, 357 F.3d 1140, 1142 (10th Cir.2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See Id.* Even if a claimant

7

is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.* Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determined if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The magistrate judge acknowledged that plaintiff testified that he suffered from pain in his neck and hands, but he found that plaintiff's subjective complaints of neck and hand pain were not supported by any objective evidence in the administrative record. Dkt. # 16, at 14. He also noted that the ALJ did not make any finding as to plaintiff's complaints of neck and hand pain, but determined that the "scant subjective evidence" of neck and hand pain was not significantly probative and the ALJ was not required to make a written finding on this issue. Id. Plaintiff argues that the ALJ failed to consider plaintiff's cervical fusion surgery in 1997 and his testimony concerning limited neck movement and pain in his hands and shoulders, and the magistrate judge improperly created a post-hoc justification to excuse the ALJ's failure to consider significant evidence supporting plaintiff's claim for disability benefits. Dkt. # 17, at 12-13.

Plaintiff testified that he had neck fusion surgery in 1997, but has not had any follow-up surgery on his neck. Dkt. # 11-5, at 42. However, he stated that he regularly had pain in his neck, and the movement of his neck was restricted as a result of the neck fusion surgery. Id. at 58. He stated that he suffered from numbness in his hands and he had difficulty performing daily chores if he was required to lift anything heavier than a gallon of milk. Id. at 55-56. The administrative record contains some evidence supporting plaintiff's claims of neck and hand pain and, more importantly, it is clear that the ALJ was aware of this issue and failed to make a finding as to the need for exertional limitations on plaintiff's use of his neck and hands. The ALJ's written decision referenced plaintiff's testimony concerning neck pain and he stated that plaintiff "has a pain in his neck that will go from the shoulders." Dkt. # 11, at 60. However, the ALJ then stated that plaintiff made "no complaint concerning any neck or cervical pain," and he made no finding as to the credibility of plaintiff's testimony on this issue. Id. at 61.

9

The Court has independently reviewed the medical evidence in the administrative record and there is some evidentiary support for plaintiff's testimony that he suffered from neck pain and had restricted movement or use of his neck and hands. Plaintiff's medical records show that he had neck fusion surgery in 1997. See Dkt. # 11-2, at 22, 26. There is no evidence that plaintiff received additional treatment related to neck for several years, although plaintiff repeatedly complained of back pain and had several back surgeries. However, plaintiff had a decreased range of motion in his neck after his neck fusion surgery and he claims this is a permanent condition. Dkt. # 11-4, at 4. The August 27, 2007 report of Kenneth R. Trinidad, D.O., appears to support plaintiff's complaint of permanent neck pain. Id. at 433-36. Dr. Trinidad noted plaintiff's complaints of neck pain and restricted movement of his neck, and he found that plaintiff could not perform repetitive tasks with his left hand. Id. at 435. Dr. Trinidad stated that he did not believe that plaintiff could perform even sedentary work due to pain in plaintiff's back and neck and plaintiff's inability to engage in repetitive movements with his hands and feet. Id. The ALJ found that Dr. Trinidad's findings were inconsistent with other medical evidence, but he did not make any findings about plaintiff's complaints of neck or hand pain. Dkt. # 11, at 62.

The Court has reviewed the magistrate judge's report and recommendation, including his thorough survey of the medical evidence in the administrative record, and plaintiff's objection to the report and recommendation. The Court notes that this is a close case and the administrative record shows that plaintiff's complaints of back pain, rather than neck or hand pain, appear to the predominate source of plaintiff's pain and resulting exertional limitations. However, there is sufficient medical evidence to support plaintiff's subjective complaints of neck and hand pain, and the ALJ should have made a finding as to the need for exertional limitations on plaintiff's use of his

10

neck and hands. The VE testified that any limitation on the horizontal or vertical movement of plaintiff's neck would prevent plaintiff from performing almost any job, and the VE described this type of limitation as "very restrictive." Dkt. # 11-5, at 75. Any limitation on the use of plaintiff's hand would also rule out any of the four jobs listed by the VE, because each of those jobs would require frequent reaching and handling. See DICTIONARY OF OCCUPATIONAL TITLES § 209.587-034 (4th ed. 1991) (job of marker requires frequent reaching and handling); id. at § 361.687-014 (laundry sorter or "classifier" engages in frequent reaching and handling); id. at § 521.687-086 (job of "nut sorter" requires frequent reaching and handling); id. at 692.685-266 ("zipper trimmer" engages in frequent reaching and handling). If the ALJ were to find that restrictions on the movement or use of plaintiff's neck and hands were appropriate, this would have a significant impact on plaintiff's eligibility for disability benefits, and the Court finds that the case should be remanded for further administrative proceedings. The ALJ, not this Court, should consider in the first instance whether any limitations of the use or movement of plaintiff's neck or hands are warranted by the evidence.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 16) is **rejected**. The Commissioner's decision to deny plaintiff's claim for disability benefits and supplemental security income is **reversed** and this case is **remanded** for further administrative proceedings. A separate judgment is entered herewith.

**DATED** this 22nd day of June, 2011.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT